# Ben Chapman v. The State.

No. 19873.  Delivered November 9, 1938.
Rehearing Denied February 1, 1939.
Second Motion for Rehearing Overruled.
February 15, 1939.

The opinion states the case.

*Willis & Via,* of Pampa, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

KRUEGER, JUDGE.—The offense is murder, the punishment assessed is confinement in the state penitentiary for life.

The state's testimony, briefly stated, shows that on the 14th day of December, 1937, appellant, Warren and the deceased went from Borger to Wheeler as witnesses to give testimony in a certain case then on trial. In the afternoon they drove to Shamrock, where appellant purchased two pints of whisky. They consumed one of these before they started on their return trip and had practically consumed the second when the homicide occurred. All three of the men were riding in Warren's automobile. Warren was driving. The deceased was sitting on the right side of Warren and appellant was on the rear seat. A few seconds prior to the time of the fatal shot, the deceased asked Warren for a cigarette. Warren handed a package to him and he passed it on to appellant. After the deceased had lighted his cigarette, appellant apparently became angry because they failed to light his cigarette for him and made the remark: "You bastards won't let me light." Whereupon the deceased knocked the ashes off his cigarette and passed it to

appellant to light his thereon, which he did. After they had travelled a short distance, appellant commanded Warren to stop the car and ordered them to get out. As the deceased was in the act of doing so, appellant shot and killed him.

Appellant's first complaint is that the court erred in declining to sustain his motion for a separate trial on his plea of present insanity. The court qualified this bill of exceptions and in his qualification states that the trial of the case was set for January 24, 1938, and a special venire was drawn and summoned; that at 10:00 o'clock on said date, the defendant announced ready for trial and he was duly arraigned and pled not guilty. Thereupon the examination of the prospective jurors began and at 6:45 P. M. the selection of the jury was completed and they were sworn in as prescribed by law. The jury was then retired in charge of an officer and a recess was taken until 10:00 A. M. of the following morning. At 7:00 P. M. on January 24th, defendant, through his counsel, filed with the clerk of the court an affidavit, signed by Mrs. Ben Chapman, which was immediately presented to the court for consideration. On the following morning at 10:00 o'clock, defendant filed his application for a sanity hearing based upon said affidavit. The court declined to grant his request for a sanity hearing separate from the trial on the offense charged in the indictment for the reason that defendant had had the affidavit for some time before the same was filed, but elected to withhold it, announced ready for trial on the murder charge, selected a jury from the special venire and presented it after the regular jury for the week had been discharged.

The court based his action on the theory that the request must be made prior to the time of announcement of ready for trial, unless good and sufficient reasons are assigned why the same was not timely made; that defendant's delay in filing the affidavit and making the request was an election, or at least a tacit concurrence by him to be tried on the indictment for the offense therein charged, subject to his plea of insanity, both as to the time of the commission of the offense and at the time of the trial. The court stated at the time that the issue of insanity, both as to the time of the commission of the offense and at the time of trial, would be submitted to the jury and this was done. Appellant has accepted the bill with the court's qualification thereto and is bound thereby.

It seems to be the settled law of this state that when a person is charged with an offense and files an affidavit of present insanity, accompanied by a request for a separate trial on that

issue, he is entitled to it. See Art. 34, P. C., Guagando v. State, 41 Tex. Rep. 626; Ramirez v. State, 92 Tex. Cr. R. 38, 241 S. W. 1020; Norford v. State, 34 S. W. (2d) 290; Pickett v. State, 113 Tex. Cr. R. 395; Soderman v. State, 260 S. W. 607; Rice v. State, No. 19815, delivered by this court on October 26th, but not yet reported. (135 Texas Crim. Rep., 390).

But this must be done at a proper time and we think the proper time for such a request is before announcing ready for trial on the charge in the indictment. Otherwise, the defendant might wait until jeopardy had attached and then require the court to proceed with the trial of the case to its conclusion to prevent former jeopardy and in case of a conviction require the court to give him a new trial, which in most instances, would amount to a continuance of the case and give him two trials on the merits. Furthermore, it would prevent a speedy public trial as provided for in the Constitution.

It seems to us that such a procedure would interrupt the speedy and orderly procedure in the trial of criminal cases in which the issue of insanity might be raised. It occurs to us that the rule herein announced is in harmony with the provisions of Art. 516, C. C. P., providing that a defendant may file written pleadings at any time before the cause is called for trial, except in cases of change of venue. This leads us to the conclusion that the request for a separate trial on the plea of present insanity should be made before defendant announces ready for trial or some good and sufficient showing made why it was not done. See Lermo v. State, 68 S. W. 684.

Bills of exceptions numbers three to twelve, inclusive, show upon their face to have been approved by the trial court on the 28th day of February, 1938, but were not filed until May 13, 1938, 116 days after notice of appeal was given and 104 days after court adjourned for the term. Bill of exception number two appears to have been presented to the court for approval on May 13th, and was approved by him on the same day and filed with the clerk, which was too late. Hence the same is not entitled to be considered.

Appellant, by his own affidavit and that of his wife, undertakes to relieve himself and his counsel from negligence in securing the approval of his bills of exception and the filing thereof within the ninety days' time alloted to him by the court. These affidavits are based upon hearsay. They show that appellant's attorney, by letter and telephone, requested the court to approve the same and have them filed. The duty devolved upon appellant's attorney to see to it that they were filed in

time. If he sought to impose such duty upon the judge or anyone else who failed to do so, then such failure is properly chargeable to him and his attorney. See Carpenter v. State, 83 Tex. Cr. R. 87; Riley v. State, 95 Tex. Cr. R. 539, 255 S. W. 179.

It appears from the affidavit of Mrs. Chapman that she was informed by the court reporter on April 12th that the bills had not been filed, but it does not appear that his attorney made any effort, other than as above stated, to attend to the filing thereof. No excuse is offered for his failure to do so. Under the showing made, they are not subject to be considered. See Roberts v. State, 168 S. W. 98; Riojas v. State, 36 Tex. Cr. R. 182; Sullivan v. State, 62 Tex. Cr. R. 410; Diggs v. State, 141 S. W. 100.

The statement of facts was not filed in time, but the stenographer made an affidavit that he was sick a part of the time at least and could not complete it within the 90 days after notice of appeal was given. Under the showing thus made, we will consider it as though it was filed in time. See Wilson v. State, 51 S. W. (2d) 595.

Bill of Exception No. 14 reflects the following occurrence: When the jury returned into court with their verdict finding the defendant guilty as charged in the indictment and assessing his punishment at confinement in the state penitentiary for life, appellant objected to the verdict before it was received by the court and requested him to retire the jury and require them to make a specific finding upon the appellant's state of mind at the present time, which the court declined to do. We think that a failure or refusal of the jury to make a specific finding thereon under the charge of the court is tantamount to a finding that he was sane at the time of trial. Had the jury found that he was insane, they no doubt would have written their verdict in the form given them by the court to that effect. It was only necessary to make a specific finding in case they found him to be insane at the time of the trial and not otherwise. We therefore overrule the appellant's contention.

Appellant complains because the court declined to instruct the jury that if they believed from the evidence that appellant was affected with syphilis and that said disease, together with the recent use of ardent spirits, produced a state of temporary insanity to acquit him. We are of the opinion that appellant was not entitled to such an instruction. Although it may be conceded that he had syphilis, if this alone did not produce temporary insanity, but the voluntary recent use of

ardent spirits in addition thereto caused him to become temporarily insane, then the recent use of ardent spirits would be the direct and immediate cause of the claimed insanity, but for which he would not have been temporarily insane.

Consequently it follows that although he may have had syphilis or may have been in a weakened physical condition due to some other cause, yet if the recent use of ardent spirits was the primary cause which produced the temporary insanity, he would be in the same condition, in the eyes of the law, as a healthy, robust man who indulged in the use of ardent spirits and as a result became temporarily insane. It may be true that a person affected with syphilis is more susceptible to intoxication. This, however, would not constitute any defense, but under the law might be considered by the jury in mitigation of the punishment to be assessed. We think this case is distinguishable from the case of Phillips v. State, 98 S. W. 868 by the facts.

Appellant also objected to the court's instruction with reference to insanity at the time of the commission of the offense and the instruction with reference to insanity at the time of trial on the ground that one was in conflict with the other, in this: That the court in his instruction upon the issue of appellant's insanity at the time of the commission of the alleged offense charged, among other things, as follows: "The question of the insanity of the defendant has exclusive reference to the act with which he is charged, at the time of the commission of the same. If he was sane at the time of the commission of the crime, he is amenable to the law."

This must be read and construed in connection with the preceding instruction on the subject.

In the succeeding paragraph the court instructed the jury with reference to the law on present insanity (at the time of the trial) as follows: "You are further charged that under the laws of this State, no person shall be convicted of a criminal offense while in a state of insanity, and if, upon the trial of this cause, the Defendant should be found to be now insane, the law provides that he shall not be convicted at this time of the offense charged in the indictment."

We fail to see any contradiction in the instruction such as would tend to mislead the jury to the detriment of the appellant. It seems clear from the language employed that Paragraph 12 of the court's charge related to appellant's insanity at the time of the commission of the offense, and Paragraph 13 had reference to his state of mind at the time of trial, with a

definite instruction of what their verdict should be in case they found him to be insane at the time of his trial. It does not seem reasonable that a jury composed of men of average intelligence would fail to understand the plain and specific instruction that they could not convict him of the offense charged in the indictment if they found him to be insane at the time of trial.

We see no error in the court's action in declining to submit to the jury appellant's requested instructions for the reasons stated by us in our discussion of appellant's objection to the court's main charge, and we see no need in reiterating the same.

All other matters complained of have been carefully considered by us and are deemed to be without merit.

The judgment of the trial court is affirmed.

The foregoing opinion of th Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

GRAVES, JUDGE.—Appellant again complains because of the fact that the trial court refused to entertain appellant's request for a separate trial as to his present insanity, and quotes the cases cited by us in our original opinion, which he contends uphold his contention. Among these cases we note the case of Lermo v. State, 68 S. W. Rep. 684. Probably, however, the leading case in such matters is that of Guagando v. State, 41 Texas, 630, and both of these cases are rather similar in their facts to the instant one. In the Guagando case it appears that an affidavit of insanity was filed after an announcement of ready in the trial, a jury having been selected, and the defendant had pleaded not guilty. The same facts appear herein. But in the Guagando case, after a conviction therein, the court held another trial relative to the defendant's sanity, and submitted to the jury therein four questions: 1st, as to whether defendant was sane at that instant; 2nd, was he sane on yesterday, the day of his trial; 3rd, was he sane on the night of the killing, and, 4th, had he ever been insane. The appellate court held in such case that such a procedure was in violation of Guagando's rights; that such a procedure was proper only relative to insanity *after conviction,* under another and different statute than the one invoked at the beginning of such trial. That such later trial on the sanity question did not fulfill the law relative to the trial of present insanity, and the cause was reversed. It

seems to us, however, that such reversal was based mainly upon the ruling of the trial judge which eliminated all references to insanity during the trial of the main issue of murder. We quote from the reporter's notes in 41 Texas, 627:

"It was further stated by the court, in refusing the application, that the question of insanity would be tried in case the defendant was convicted before a judgment would be rendered on the verdict."

In the case of Lermo v. State, 68 S. W. Rep. 684, the facts are practically the same as this instant case, and Judge Davidson said in that case (page 685): "It would be safe practice, where the question of present insanity is properly suggested, before the trial begins, for the court to try the issue before going into the trial under the plea of not guilty. But where the question of present insanity is suggested after the plea of not guilty, and the impanelment of the jury, we see no reason why, under the authorities, the issue could not be tried along with the general plea. In either event, where the question to present sanity is an issue, defendant's attitude or mental condition should be regarded, and opportunity afforded for securing the introduction of testimony; and the court should be satified that the mental condition of the accused is such that he could comprehend and understand the process of his trial under the plea of not guilty, before a conviction will be permitted. We are therefore of opinion that the court did not err in requiring appellant to proceed, under the facts as stated in the bill."

We are also aware of the holding in the case of Ramirez v. State, 241 S. W. Rep. 1020, and of its discussion of the two cases of Guagando and Lermo, supra. In the Ramirez case, however, we do not find such a close similarity of facts. It does not appear therein that an announcement of ready had been made, nor that a jury had been selected, nor that the defendant had pleaded not guilty to the accusation, at the time of the filing of the affidavit of insanity. We do not criticise the ruling in such case; we do doubt its application here. We feel sure that had the affidavit of insanity herein been presented to the trial court at the proper time, the court would have granted him a trial thereon. We think after all preliminaries had been disposed of and appellant had pleaded before a jury, that such request for a separate insanity trial came too late. It is here worthy of note that the testimony of appellant's insanity was allowed to go untrammelled before the jury, and the trial judge gave an exhaustive charge upon every phase presented by such evidence. He instructed the jury relative to insanity

at the time of the commission of the alleged offense, and told them what verdict they should return should they find him to have been insane at such time. He also instructed the jury as to present insanity, and told them what verdict they should return in the event of such finding. In other words, he followed the recent enactment of the 45th Legislature, Regular Session, H. B. 993, Harlow's Regular Session Laws 1937, p. 575, in presenting to the jury the question of a defendant's insanity at the time of, or after the commission of the offense, as well as the trial thereof, and it occurs to us that such a procedure, having been provided for by the legislature, is strongly indicative of the correctness of our original opinion herein relative to this matter.

We have decided, under the peculiar circumstances of this case, that appellant's attorneys exercised all the diligence that could reasonably be required of them in order to have their bills of exception filed in time, and it was through no fault of theirs that same were filed too late, and we will, therefore, proceed to consider the bills brought forward in a suplemental transcript.

Bill of exceptions No. 2 complains because while the witness G. L. Warren was on the stand, and after he had been allowed to testify that at the scene of the homicide he had stated that he thought the appellant was insane, and after he had testified on the stand that he then thought the appellant was insane, the appellant's attorney asked him why he thought the appellant was insane,—to which the State objected because the same would be a conclusion of the witness, and that such facts were immaterial. We notice, however, that in his testimony given as to what happened at the scene of the homicide, and as to what appellant said and did thereat, the witness testified fully, and since the bill shows that the witness gave his opinion as to the sanity of the appellant, we are not impressed with the seriousness of this alleged error. Appellant obtained the testimony; he was only temporarily deprived of the process of reasoning by which the witness arrived at the conclusion evidenced by the testimony.

Bill of exceptions No. 3 is concerned with the testimony of Ina Aston wherein she stated, while on the stand, that the deceased had two little boys, and they were in the court room at that time. We do not think the matter of sufficient importance other than to say that we see no error reflected therein.

Bill of exceptions No. 4 does not reflect any error in the light of the trial judge's explanation thereof.

Bills of exception Nos. 5, 6, 7, 8 and 9 all relate to the same

alleged error, and can be disposed of together. The appellant's defense was that of insanity, caused by the onset of syphilis, and that his mind was so deranged at the time of the homicide that he did not know the difference between right and wrong. The State's theory was that appellant was drunk from the use of ardent spirits, and that his usual habit and custom when drunk was to pull his pistol and attempt to kill some one against whom he had a real or fancied grudge. In each of these bills the testimony, so it seems to us, was offered and used in rebuttal of the affirmative testimony relative to insanity in showing that it was practically the habit of appellant, when in a drunken condition, to do or attempt to do the same thing that he did at the killing of Lee Hutson, and therefore such testimony was persuasive in showing that appellant was not insane but only drunk, and doing the same thing that he usually did when he was drunk. We think that under this theory the testimony of such witnesses was admissible.

Bill No. 10 complains of the trial court relaxing the rule as to witnesses being excluded from the court room during the trial in that he allowed the witness Neal Arthur, an investigator for the public safety department, having a commission as an officer,—to remain in the court room during the trial of the case. The court stated that he used such officer during the trial, and we can see no reason for finding that the trial court abused his discretion in the matter complained of. Often it is impossible for this court to know the exact circumstances surrounding the trial of cases in the lower courts, and such matters as govern such procedures are usually left to the sound discretion of trial judges. We do not think any error is shown in such bill.

Bill of exceptions No. 11 relates to the mere asking of the same question as is complained of in bill of exceptions No. 3. It is sufficient to say that our ruling thereon is the same as that relative to bill No. 3.

Bill of exceptions No. 12 relates to a matter similar to that complained of in bills Nos. 5, 6, 7 and 8, and is governed by the same ruling.

Bill of exception No. 13 relates to the district attorney asking the witness Barto Hammonds relative to the appellant having been discharged as a policeman at Mt. Pleasant, Texas, for drunkenness in the year 1926. We gather from said bill that the court did not permit the witness to answer the question. Under the facts as shown in said bill we are not prepared to say that the asking of such question was error of a serious nature.

We have endeavored to notice all of the questions raised by appellant in the bills not heretofore noticed, and we find no reason for receding from the conclusion heretofore reached in our original opinion on the questions there treated.

The motion for rehearing will be overruled.

### ON REQUEST FOR LEAVE TO FILE SECOND MOTION FOR REHEARING.

HAWKINS, JUDGE.——Because appellant's bills of exception were considered for the first time on motion for rehearing we have examined his request for leave to file second motion.

Appellant calls attention to qualifications on certain bills of exception to which appellant accepted. In most instances the qualifications in no way alter the recitals in the bill but relate only to the reasons of the trial judge for the ruling complained of. We note that the disposition of the bills in our opinion on rehearing seems to have been proper regardless of the qualification which was excepted to. Believing that our former disposition of the case was correct we must respectfully order that appellant's second motion for rehearing be overruled.